## The People v. Charles Fay.

*Criminal law—Evidence—Depositions—Information—Variance.*

A respondent who has caused the depositions of convicts in the State prison to be taken, and whose attorney reads them to the jury, is not in a position to complain of their introduction in evidence.

Error to recorder's court of Detroit. (Chambers, J.) Submitted on briefs November 12, 1891. Decided December 21, 1891.

Respondent was convicted of perjury. Conviction affirmed. The facts are stated in the opinion.

*A. H. McDermott,* for respondent, contended:

1. The right to take depositions to be read upon a trial is such as the statutes provide for, and no other, and neither . do our statutes nor the common law authorize taking depositions of persons confined in prison; citing *People v. Sligh,* 48 Mich. 54; *People v. Dowdigan,* 67 Id. 92.
2. It is admitted that previous to Fay's trial, the judge of the recorder's court refused to issue a writ of *habeas corpus ad testificandum* to bring Connerton and Martin from the State prison to testify in this case. But a respondent is entitled to be confronted by witnesses, and to compulsory process to obtain them; citing Const. Mich. art. 6, § 28; U. S. Const. Amend. 6.
3. How. Stat. § 9792, permits prisoners (felons or not) to be produced as witnesses in behalf of a respondent; and How. Stat. § 8548, which forbids felons to be taken into court to testify in behalf of a respondent, is contrary to U. S. Const. Amend. 14, § 1, in that it denies equal protection under the law to all persons within the jurisdiction of the State.
4. A respondent cannot by his attorney waive any of his rights; citing *Swart v. Kimball,* 43 Mich. 443.

*A. A. Ellis,* Attorney General, and *James V. D. Willcox,* Prosecuting Attorney, for the people.

LONG, J.   The respondent was convicted in the recorder's court of the city of Detroit of the crime of perjury.

The information charged the offense to have been committed in the case of *People v. Frank Connerton,* who was charged with the crime of burglary.   The respondent in this case appeared and testified in behalf of Connerton on his examination before Police Justice Haug.   It became a material matter on that examination whether King, a witness in that case, was in the city of Detroit, the place where the burglary was committed, on the 28th and 29th days of March, 1890.   The witness King was called by the prosecution to show that Connerton was in Detroit on these days, and that he (King) was present with him during the time the offense was committed.   The respondent, Fay, was called by defendant, Connerton, to contradict the testimony of the witness King.   Fay testified as follows:

"I know witness King, and have known him a month or two months.   Where Mr. Boyd keeps a shipping office I met him.   I met Mr. King down there, and a one-armed man.   We went down to Buffalo about February 13 or 14.   We went as far as Toledo, when King left us; and when we came back we saw King at Cleveland. This was about February 27.   He came up to Toledo with us; and King stayed at Toledo, and I went to Ann Arbor; and I haven't seen him until to-day.   I am positive King was not in Detroit February 28.   That is the day Connerton is alleged to have stolen this property from Mr. O'Rourke's.   I swear Mr. King was not here last Friday, or a week ago last Friday, or two weeks ago.

[Signed]          "CHARLES FAY (his mark)."

It will be noticed from the testimony above set out that Fay stated the time as the month of February in one portion of his testimony.   In another portion of his testimony he says:

"I swear Mr. King was not here last Friday, or a week ago last Friday, or two weeks ago."

It appeared by the testimony of the clerk of the police court, taken upon the present trial, that this testimony was given by Fay on April 11, 1890.

The claim on the part of the respondent here is that there is a variance between the time stated in the infor-mation and the time testified to by Fay when he saw witness King in Cleveland as being the time Fay testified King was not in Detroit. The information charged that Fay testified that he (Fay) was in the city of Cleveland, state of Ohio, on the said 28th day of March, 1890; that he saw the said Edward King at the said city of Cleveland on the 28th day of March, A. D. 1890; and that he was positive, of his own knowledge, that said Edward King was not in the said city of Detroit on the said 28th day of March, A. D. 1890; whereas, in truth and in fact, the said Charles Fay was not in the said city of Cleveland on the said 28th day of March, A. D. 1890, and had no knowledge as to the whereabouts of said Edward King on the said 28th day of March, A. D. 1890.

The offense for which Connerton was on examination before the police justice was for breaking into and enter-ing the store of one O'Rourke on March 28, 1890; and the witness King had testified that he was present with Connerton at that place on that night. The only pur-pose for which Fay was called was to contradict King by showing him to be in another place at that particular time, and to show that King was not in Detroit on the night of the 28th of March. It is evident from the other testimony in the case that Fay was called for that par-ticular purpose, and for no other. The whole testimony, when considered in the light of the charge against Con-nerton, and the testimony given by King, plainly indicates that Fay intended to be understood and was understood

as testifying that King was not in Detroit on the night of the 28th of March, and therefore could not have been present with Connerton when the burglary was committed. The testimony in the present case abundantly shows that this was false; that Fay's testimony was procured by Connerton, he and Fay both knowing its falsity. Direct and convincing proof of that fact was given upon the trial of this case. The procuring of Fay's testimony in the police court on April 11 was a wicked and deliberate attempt upon the part of Connerton and Fay to defeat the ends of justice. The trial court, we think, very properly gave this construction to Fay's testimony, and held there was no variance between the proofs and the information.

The question of fact as to his innocence was left to the jury, and the court charged them:

"It is for you to say whether this party swore on that occasion to what it is alleged he swore to, whether it was material to the issue, and whether it was willfully false or not."

There is one other error alleged in the proceedings. It is contended that the court was in error in requiring the defendant to read the depositions of Connerton and one Charles Martin upon the trial. Connerton and Martin were confined in the State prison. Connerton was there under conviction for this burglary, and Martin was serving a term there for perjury committed in the Connerton case, of like character charged against the respondent here. Application had been made by the respondent in this case to this Court for a *mandamus* to compel the prosecuting attorney to indorse the names of Connerton and Martin upon the information, and to produce them as witnesses in behalf of the people upon the trial of the case. This application had been denied by this Court, and thereupon the respondent procured the

depositions of Connerton and Martin to be taken, and the court permitted these to be read upon the trial.

There was no error in this. The depositions had been taken and filed in the cause by the respondent, and he was under no compulsion to read them to the jury. His counsel, it appears, offered to read the depositions of these witnesses, and did read them, to the jury. The respondent is not now in a position to complain of the introduction of the depositions.

We find no error in the record, and the conviction must be affirmed.

The other Justices concurred.